## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHERINE RAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case no. 1:20-cv-2973 |
| | ) |
| MADISON COUNTY, | ) |
| MADISON COUNTY SHERIFF'S | ) |
| DEPARTMENT, | ) |
| MADISON COUNTY COMMISSIONER'S | ) |
| OFFICE, and | ) |
| MADISON COUNTY COUNCIL | ) Request for jury trial. |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

Plaintiff, Catherine Ray, by counsel, alleges the following against Defendants:

## FACTUAL ALLEGATIONS

1. On November 21, 2018, officers with the Anderson Police Department responded to a disturbance at 3610 Forrest Terrace, Anderson IN 46013.

2. Ms. Ray was present at this address.

3. Ms. Ray is Deaf and communicates using American Sign Language ("ASL").

4. Ms. Ray was placed under arrest by the Anderson Police Department and transported to the Madison County Jail.

5. The Madison County Jail is operated by the Madison County Sheriff's Department.

6. While detained within the jail, Ms. Ray was handcuffed behind her back.

7. As Ms. Ray communicates using ASL, the handcuffs completely prevented her ability to sign or communicate.

8. Once her handcuffs were removed, Ms. Ray repeatedly tried to gesture and sign to jail staff that she is deaf and needed access to a qualified ASL interpreter in order to effectively communicate.

9. Ms. Ray's requests for an ASL interpreter were ignored and denied.

10. At no time during her incarceration with the Madison County Jail was Ms. Ray provided access to a qualified ASL interpreter or other auxiliary aids.

11. Ms. Ray was unable to understand the instructions and processes she was expected to follow within the jail.

12. While in custody, Ms. Ray was fingerprinted, had her mugshot taken, and was taken to the medical department without ever having access to a qualified sign language interpreter or any other auxiliary aids to allow for effective communication.

13. When completing the booking questionnaire, Ms. Ray wrote "I'm full Deaf" next to the question "Do you understand all the questions?"

14. Also in the booking questionnaire, Ms. Ray responded to the question, "are you fearful for any reason?" by writing, "I'm alone! I'm deaf."

15. The officers attempted to gesture to Ms. Ray to explain what she was required to do within the jail; however, without effective communication methods, Ms. Ray was unable to understand what she was supposed to do.

16. At no time during her arrest or incarceration were Ms. Ray's charges ever explained to her.

17. The only method of communication made available to Ms. Ray was written notes.

18. Ms. Ray's first language is American Sign Language, not English.

19. Given this, exchanging written communication was labored, confusing, and ineffective for Ms. Ray.

20. Written communication is not Ms. Ray's preferred method of communication, nor is it effective, especially in a stressful environment such as a jail.

21. Ms. Ray also requested to have access to her video phone.

22. Her phone was in her possession when she was arrested.

23. Upon information and belief, Ms. Ray's video phone was inventoried at the jail.

24. At no time did jail staff allow Ms. Ray to have access to her video phone in order to contact anyone.

25. Ms. Ray was detained without having the rules and procedures of the jail explained to her or any explanation as to how she might access services available within the jail – such as access to a telephone, recreational or religious activities, or equal access to medical care as hearing offenders.

26. Ms. Ray was also taken to medical staff during her incarceration.

27. After Ms. Ray's weight and blood pressure were taken, she was given a piece of paper with information regarding "TB."

28. Ms. Ray only recalls being told, "TB," and she was unable to read and understand the paperwork provided. She did not know what "TB" meant and was unable to understand or answer the nurse's questions fully.

29. Ms. Ray was then given an unknown injection on the top of her left forearm. Shortly after receiving the injection, her arm was red and swollen. Ms. Ray also felt warm, had a dry mouth and recalls feeling dizzy.

30. Ms. Ray was frightened as she did not know what had been injected into her arm, did not know if she was or could experience significant side effects, and was scared she would be sick. She also didn't know if she required medical follow up care.

31. Medical staff also failed to provide Ms. Ray with a qualified ASL interpreter or auxiliary aids when they attempted to ask her medical intake questions.

32. Without an ASL interpreter or any other auxiliary aid, Ms. Ray was unable to understand what was being asked and was unable to provide staff with her complete medical information.

33. A hearing individual would have been provided with information about any injection before administration as well as information about side effects, treatment, and likely would have given his or her consent.

34. Both custody and medical staff refused to provide Ms. Ray with effective communication through a qualified sign language interpreter or any appropriate auxiliary aid.

35. Without a qualified sign language interpreter or any other appropriate auxiliary aid, Ms. Ray was unable to effectively communicate while in custody with jail personnel and medical staff, and she did not have meaningful access to the services or information available to an inmate who is hearing.

36. During her time in the Madison County Jail, officers attempted to communicate with Ms. Ray by speaking. Ms. Ray could not understand them.

37. Upon information and belief, these officers expected Ms. Ray to read their lips.

38. Ms. Ray has very limited ability to read lips.

39. Lip reading is not an effective form of communication for Ms. Ray.

40. Being incarcerated without any way to effectively communicate was stressful and confusing for Ms. Ray.

41. When in her cell, Ms. Ray gestured through the window to staff that she needed to make a phone call.

42. In response, an officer took her out of her cell and provided a TTY, an outdated technology.

43. A TTY is a telecommunication device that allows a deaf individual to use the telephone to communicate, by allowing her to use the phone to exchange written messages instead of talking and listening.

44. Ms. Ray attempted to plug the TTY into the phone provided by the correctional officer with a cord. However, the officer did not have the power cord.

45. The cord was never located so the TTY was inoperable and Ms. Ray was unable to call any family members or friends during her incarceration.

46. The Madison County Sheriff's Office maintains a Jail Division policy, "Facility Disabled Persons," where staff are directed to approach inmates with disabilities in a discriminatory manner as the policy states, "[c]orrectional officers are cautioned that persons with disabilities often rely on their disability to attempt to manipulate and control their environment. Do not be lulled into an unsafe practice."

47. Defendants' failure to provide Ms. Ray with effective communication via access to an ASL interpreter or any other auxiliary aid or service caused her to experience stress, trauma, and confusion during her incarceration.

48. Defendants' obligation to provide Ms. Ray with effective communication during incarceration is well founded. (*see Kennington v. Carter*, 2004 WL 2137652 (S.D. Ind. June 28, 2004)).

## PARTIES

49. Plaintiff Catherine Ray is a resident of Anderson, a city within Madison County, Indiana, and is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12133 ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a ("Section 504").

50. Defendant Madison County Sheriff's Department, at all relevant times, was responsible for operating the Madison County Jail and is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is subject to Title II of the ADA and its implementing regulations.

51. Defendant Madison County Sheriff's Department is a recipient of federal funding within the meaning of Section 504, 29 U.S.C. § 794; 28 C.F.R. 42.540(e)-(f), and operates services, programs, or activities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act.

52. Defendant Madison County, is a governmental entity located in the State of Indiana and is responsible for operating of the Madison County Sheriff's Department and is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is subject to Title II of the ADA and its implementing regulations.

53. Defendant Madison County is a recipient of federal funding within the meaning of Section 504, 29 U.S.C. § 794; 28 C.F.R. 42.540(e)-(f), and operates services, programs, or

activities, through its agencies and departments, including the Madison County Sheriff's Department, within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act.

54. Defendant Madison County Commissioner's Office is a governmental entity located in the State of Indiana and is responsible for administering the Madison County government, including the Sheriff's Department, and is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is subject to Title II of the ADA and its implementing regulations.

55. Defendant Madison County Commissioner's Office is a recipient of federal funding within the meaning of Section 504, 29 U.S.C. § 794; 28 C.F.R. 42.540(e)-(f), and operates services, programs, or activities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act.

56. Defendant Madison County Council is a governmental entity located in the State of Indiana and is responsible for working with the County Commissioners in administering the Madison County government, including the Sheriff's Department, and is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is subject to Title II of the ADA and its implementing regulations.

57. Defendant Madison County Council is a recipient of federal funding within the meaning of Section 504, 29 U.S.C. § 794; 28 C.F.R. 42.540(e)-(f), and operates services, programs, or activities within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act.

## JURISDICTION AND VENUE

58. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Ms. Ray's state law claims under 28 U.S.C. § 1367 and principles of ancillary jurisdiction.

59. Defendants are located within this District, and the events giving rise to the claims identified within this complaint substantially occurred in this District. Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue.

## CAUSES OF ACTION
## COUNT I
## AMERICANS WITH DISABILITIES ACT

60. Ms. Ray is deaf and is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12133.

61. All Defendants are local government entities or other instrumentalities of a local government and are public entities as defined in 42 U.S.C. § 12131(1).

62. Title II of the ADA, 42 U.S.C. § 12132, applies to local governmental entities, such as all Defendants, and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

63. Title II of the ADA prohibits Defendants from discriminating against a qualified individual with a disability, such as Ms. Ray, by denying her the benefits and services afforded to individuals without a disability.

64. By policy, practice, procedure, and through their employees, based on the facts above, Defendants discriminated against Ms. Ray on the basis of and because of her disability by denying her the benefits, programs, and services afforded to hearing individuals.

65. Defendants discriminated intentionally against Ms. Ray in violation of Title II of the ADA, 42 U.S.C. § 12132, by refusing to provide a qualified ASL interpreter or auxiliary aids and services necessary to ensure effective communication.

## COUNT II
## REHABILITATION ACT

66. Ms. Ray is deaf and is a qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

67. Defendants are recipients of federal financial assistance.

68. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that no qualified individual with a disability, solely by the reason of his disability, may "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

69. Defendants discriminated intentionally against Ms. Ray by refusing to provide a qualified ASL interpreter or auxiliary aids and services necessary to ensure effective communication and an equal opportunity for Ms. Ray to participate in Defendant's programs in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## COUNT III
## STATE TORT CLAIMS

70. The actions and inactions of Defendants, through their employees, constitute torts under state law, including but not limited to assault, battery, negligence, and intentional infliction of emotional distress.

71. The acts and omissions were willful, wanton, malicious, and in reckless violation of Ms. Ray's rights, subjecting her to pain, mental anguish, emotional distress, and other damages and injury.

72. Defendants are liable for the torts of its employees who were acting within the scope of employment.

73. Ms. Ray, by counsel, timely served a notice of tort claim against the defendants in compliance with Indiana Code section 34-13-3.

## **JURY DEMAND**

74. Plaintiff requests a trial by jury.

## **PRAYER FOR RELIEF**

Wherefore, Ms. Ray respectfully requests that this Court:

    A.    Declare that Defendants have violated Plaintiff's rights as described above.

    B.    Award Plaintiff compensatory damages following a trial by jury.

    C.    Award Plaintiff costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

    D.    All other just and proper relief.

Respectfully submitted,

*/s/ Nikki G. Gray*
Nikki G. Gray, # 31209-49
Indiana Disability Rights
4701 North Keystone Avenue, Suite 222
Indianapolis, Indiana 46205
(317) 722-3445
NGray@indianadisabilityrights.org